**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

FREDDIE L. BROWN, JR.     Plaintiff

v.     CIVIL ACTION NO. 3:18-cv-487-HTW-LRA

SCOTT WIGGINS AND
MICHAEL P. HAMES     Defendants

**PLAINTIFF'S ORIGINAL COMPLAINT**
**JURY TRIAL DEMANDED**

COMES NOW, Plaintiff Freddie L. Brown, Jr. ("Plaintiff" or "Brown"), and files this his Original Complaint against Defendants Scott Wiggins and Michael Hames ("Defendants" or "Wiggins" or "Hames") and for cause of action would show the Court as follows:

**INTRODUCTION**

1. This action seeks all relief allowed by law including but not limited to equitable relief, compensatory damages, punitive damages, attorney's fees, expert witness fees, taxable costs of court, prejudgment and post-judgment interest for Defendants' violation of Plaintiff's right under the Civil Rights Act of 1866, 42 U.S.C. § 1981, defamation, intentional infliction of emotional distress, false light, and tortious interference and civil conspiracy.

2. The conduct towards the Plaintiff was with malice and without legal justification and calculated to cause him extreme emotion distress, financial losses

1

in his employment, unparalleled problems with his co-workers, drive him from his employment as an airline pilot and even disrupted the operations of Plaintiff's employer, Alaska Airlines.

3. This action is brought under federal question jurisdiction.

4. Plaintiff demands a jury on all issues triable to a jury.

## PARTIES

5. Plaintiff, Freddie L. Brown, Jr. is an individual currently residing in Redondo Beach, California.

6. Defendant Scott Wiggins is a resident of the Jackson, Mississippi area. This Defendant may be served with the summons and this complaint by serving at his home of 303 Chartrese Drive, Brandon, MS 39047 or his place of employment 6071 MS-25, Brandon, MS 39047.

7. Defendant Michael P. Hames is a resident of the Southern California area. This Defendant may be served with the summons and this complaint by serving at his home 47758 Grand View Drive, Murrieta City, California 92562 or his place of employment at Alaska Airlines 19300 International Boulevard, Seattle, WA 98188.

8. Whenever in this complaint it is alleged that Defendants committed any act or omission, it is meant that the Defendants' agents committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION AND VENUE

9. This court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331 (federal question) since Plaintiff is bringing this claim under the the Civil Rights Act of 1866 which provides federal courts with jurisdiction over such claims without regard to amounts in controversy.

10. The court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 since there is a claim invoking federal jurisdiction.

11. The Court has personal jurisdiction over Defendants because Wiggins resides and works in the Jackson, Mississippi area and Hames reached into Mississippi to conspire with Wiggins.

12. Venue is proper in the United States District Court for the Southern District of Mississippi pursuant to 28 U.S.C. § 1391(a) and (b).

13. The actions made the basis of this suit were committed within the jurisdiction of the United States District Court for the Southern District of Mississippi, Jackson Division as Defendants engaged in their conspiracy herein.

## PROCEDURAL REQUISITES

14. All conditions precedent to filing this lawsuit have been met.

## FACTS

15. Brown is an African-American citizen of the United States.

16. Brown was a pilot for the United States Air Force who served at the Jackson, Mississippi Air National Guard Unit with Wiggins.

3

Case 3:18-cv-00487-HTW-LRA Document 1 Filed 07/24/18 Page 4 of 15

17. Defendants Hames and Wiggins were friends from they served in the Air Force.

18. Brown is a highly decorated veteran of three war campaigns that began in the enlisted ranks and rose to become a commissioned officer while serving in the Air Force.

19. Brown retired with over 20 years of meritorious service and received an honorable discharge upon separation from the Air Force.

20. Wiggins was Brown's commanding officer in Jackson, Mississippi.

21. Wiggins had a history of conflict with African Americans during his military career including other service persons in the Jackson unit.

22. Brown was hired as an airline pilot by Alaska Airlines and moved to Southern California.

23. Hames was also an Air Force pilot.

24. Hames is a captain for Alaska Airlines and a check-airman. Check airman administer Federal Aviation Administration (FAA) required check rides to line pilots such as Brown.

25. As such, Hames holds a quasi-management position at Alaska Airlines and can influence the careers of pilots who he gives check rides to or flies with.

26. In August of 2014, an Air Force officer, Ed Evans ("Evans"), spoke to Hames at an Air Force exercise the two were attending. Hames insisted in his conversation with Evans that Brown was a rapist and sexual predator. Hames stated that

Wiggins had told Hames this defamatory information about Brown. Hames said it was the truth because Wiggins does not lie.

27. Hames went on to stress to Evans that everyone at Alaska knew about Brown or words to the effect.

28. Evans did not relay this conversation to Brown at the time.

29. Sometime after the August 2014 military exercise, Hames complained to Alaska Airlines Los Angeles pilot base chief pilot Steve Lemley that Alaska needed to watch Brown.

30. On October 29, 2014, Brown received an unexplained, non-routine Company-directed flight evaluation—which Brown successfully passed. Upon completion of the flight evaluation, Alaska Airlines conducted an official Human Resources investigation to determine the reason for the flight evaluation per Brown's request and the results were deemed inconclusive.

31. Brown then became the subject of ridicule by some Alaska captains suggesting that he was mentally unstable ala the German Wings flight 9525 co-pilot who intentionally crashed an Airbus airliner killing 150 passengers and crew.

32. Brown complained to his employer, Alaska Airlines.

33. Alaska reacted to Brown's complaint by pulling him from flight status with pay. However, Brown was not allowed to pick up any discretionary flying. Brown suffered a loss in pay and the stress of being withheld from service.

34. Brown was returned to service after about six months.

5

35. The harassment by other employees on the line and at the training center continued. Per Alaska's request, Brown complained again when it continued.

36. Again, Brown was withheld from service by Alaska while it investigated and again Brown suffered emotionally and financially while he was not allowed to fly.

37. Brown was returned to service again by Alaska after being withheld from service for an additional four months.

38. Upon returning to work after the second period of being withheld from service, the harassment continued.

39. However, instead of it being concerns of Brown's mental stability, it was statements that he was a rapist and sexual predator.

40. In fact, the harassment and damage to Brown's reputation was so bad and pervasive by this time that a crew of flight attendants refused to fly with Brown as the co-pilot of the flight. Alaska Airlines was forced to cancel an international flight in a foreign city at cost to the airline.

41. During trips or on flights, Alaska crew members working with Brown would make strange comments like "we are watching you" or the like when other people were not within earshot.

42. In May of 2018, Brown flew with a captain who walked up to him and a flight attendant from United Airlines whom Brown was having dinner with in the crew overnight hotel restaurant-bar. The captain without need, provocation or solicitation unilaterally warned this United Airlines flight attendant to be careful because everyone was watching Brown at Alaska Airlines.

43. Later in the evening, the captain said to Brown "don't rape me, don't rape me" as he walked away with his hands suspended in the air.

44. Brown reported this conduct to Alaska Airlines and the captain was pulled off the trip and Brown was left on his original flight schedule with a new captain.

45. A few weeks later, Brown flew with another Alaska captain who told him at the end of the pairing without provocation or reason, "if you ever mess with a white woman, your career at Alaska is over."

46. Brown has been the constant victim of same or similar harassment since returning to work after his second withholding from service.

47. Flight attendants in front of Brown have voiced concerns of having to be in the cockpit alone with him in flight while the captain is on bathroom break. The FAA requires that a flight attendant come to the cockpit and remain whenever one of the pilots must leave for physiological or other reasons in flight.

48. Brown's FAA aeromedical physician has even heard of the rumors being spread about Brown from other Alaska employees.

49. Brown reached out to a former senior officer from the Air Force seeking advice and assistance. This officer, Ben Salley, told Brown he would look into the matter to see what he could figure out. Salley had mentored Brown in his career in the Air Force.

50. Brown explained to Salley that the new harassment had taken on a theme that Brown was a rapist and sexual predator unlike the earlier harassment in

7

which Brown received an unscheduled flight evaluation or his stability was questioned and that the new harassment was more pervasive and vile than before.

51. Salley did some investigating and determined that Brown's former commanding officer in the Air Force, Wiggins, was the originating source of the false rumors that Brown is a rapist and sexual predator.

52. Salley reached out to several people one of whom was Evans. Putting two and two together, Salley asked Evans for details of his encounter with Hames.

53. Salley then relayed what he had learned to Brown in late April or early May of 2018. Accordingly, Brown did not discover the source of all the animus and discrimination against Brown was the product of the conspiracy between Wiggins and Hames until that time.

54. Brown reported this to Alaska Airlines.

55. On information and belief after learning of this conspiracy and communicating with official of Alaska Airlines, Hames went to the Los Angeles Chief Pilot and advised him that Alaska needed to watch Brown. This is what led to the check ride and the other problems Brown has experienced in his contractual relationship with his employer and fellow employees at work.

56. To demonstrate how pervasive the false story of Brown being a rapist or sexual predator has become at Alaska Airlines, in that later part of July 2018, Alaska had to cancel another Costa Rica to the United States trip because the flight attendants Brown was scheduled to fly with began to harass him about not touching them or taking any inappropriate action against them.

57. Brown reported this the company and Alaska elected to cancel the flight, deadhead Brown home on another airline and remove him from flight status with pay for the rest of July.

## VIOLATION OF THE CIVIL RIGHTS ACT OF 1866

58. Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

59. The Civil Rights Act of 1866, 42 U.S.C. §1981 was enacted to prevent discrimination in commerce based on race. U.S. Citizens are supposed to be free of any impairment, interference or harassment in their places of employment that is motivated by a racial bias. Individuals can be held liable for conduct that leads to impairment or interference.

60. Brown is under a collective bargaining contract as a pilot with Alaska Airlines and therefore has a business relationship with them as an employee. He also enjoys a current and prospective relationship within the airline industry.

61. By spreading false rumors about Brown because of his race that became so pervasive around Alaska Airlines that crews would not work with him, the company had to pull him from service twice and the constant stream of comments including racially charged comments, Brown's ability to enjoy his rights to contract with Alaska Airlines have been interfered with.

62. The harassment and hostile work environment, based on his race, has been subjectively and objectively hostile and sufficiently severe and pervasive to interfere with his ability to perform his assigned duties.

9

63. Further, Defendants acted with malice or, in the alternative, with reckless indifference to the federally protected rights of the Plaintiff.

## **DEFAMATION and DEFAMATION PER SE**

64. Plaintiff incorporates by reference all the foregoing allegations in each of the paragraphs above as fully set forth herein.

65. Defendants Wiggins and Hames made false and defamatory statements regarding the Plaintiff to each other and to other parties with malice or at least fault amounting at least to negligence. As a result, Plaintiff has been damaged.

66. By willfully and with malice, starting and widely spreading the false rumor both orally and in writing that Brown was a rapist and sexual predator, Defendants defamed per se Brown because they made a false statement, without privilege to multiple third parties and Brown has suffered injury and damage from their action in his place of employment.

## **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

67. Plaintiff incorporates by reference all the foregoing allegations in each of the paragraphs above as fully set forth herein.

68. Defendants intended to cause Brown emotional distress.

69. The Defendants engaged in outrageous conduct by spreading false rumors about Brown calculated to cause him great and extreme distress in his place of employment. To say someone is mentally unstable, especially when they are an airline pilot, or a sexual predator or rapist when it is not true is atrocious, and utterly intolerable in a civilized community.

70. The Defendants engaged in their conduct wantonly and willfully and with malice and intended for Brown to suffer in his job, career and the industry and they were successful in their improper and illegal objectives.

71. Brown has suffered damages because of the Defendants' conduct.

72. As a result of the Defendants' untruthful comments, Brown suffered emotional distress.

## FALSE LIGHT

73. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

74. Defendants published untruthful statements about Brown with actual malice with put Brown in a false light at his place of employment.

75. These untruthful statements are highly offensive and embarrassing to Brown, as they would be to any reasonable person, and have caused Brown to be subjected to ridicule and harassment in his place of employment and in the airline industry.

## TORTIOUS INTERFERENCE

76. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

77. Brown has a contractual and economic relationship with Alaska Airlines and a current and prospective relationship within the airline industry as a professional pilot.

11

78.  Defendants know about these relationships. Defendants acts were willful and intentional.

79.  Defendants acts were calculated to cause Brown damage in his place of employment and within the airline industry both now and in the future. These acts were done with malice and without justification, right or privilege.

80.  As a result, Brown has suffered damage and loss.

## CIVIL CONSPIRACY

81.  Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

82.  The Defendants, a combination of two or more person yet unknown, engaged in conduct with an unlawful purpose, that is to damage and destroy Brown's reputation at Alaska Airlines and in the airline industry.

83.  The defendants had a meeting of the minds on the object and course of their actions against Brown and at least one member of the conspiracy committed an overt and unlawful act or acts against Brown in furtherance of the Defendants' plans against him.

84.  Brown suffered injury as a proximate result of the wrongful act or acts.

## ATTORNEY'S FEES

85.  Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

86.  Plaintiff is entitled to recover attorney's fees and costs for bringing this action pursuant to 42 U.S.C. §1981.

87. To the extent the law allows recovery of attorney fees or other costs for the tort claims brought, Brown seeks recovery.

## JURY DEMAND

88. Plaintiff demands a jury trial on all issues triable to a jury.

## RELIEF REQUESTED

89. Accordingly, Plaintiff respectfully requests that the Court:

   (a) Grant judgment in Plaintiff's favor for his claims pleaded under 42 U.S.C. §1981, including all compensatory damages and other equitable relief to which he may show he is entitled under those statutes;

   (b) Enter an award of attorney's fees, litigation costs, and expert witness fees in favor of Plaintiff pursuant to section 1981 and other federal statutes;

   (c) For actual and liquidated damages for the period of time provided by law, including appropriate back pay and reimbursement for lost wages, pension, insurance, and all other benefits while Brown was withheld from service by Alaska Airlines;

   (d) Reinstatement, or in lieu of reinstatement, front pay and reimbursement for future lost wages, pension, insurance, and all other benefits that will be lost in future;

   (e) For nominal, actual, compensatory damages and punitive damages as allowed by law;

   (f) For pre-judgment and post-judgment interest as allowed by law;

   (g) For Plaintiff' costs of court and other appropriate expenses and costs of prosecuting Plaintiff's claim; and

   (h) For such other and further relief to which Plaintiff may be justly entitled, as this Court deems appropriate.

## PRAYER

13

WHEREFORE, Plaintiff Freddie Brown respectfully prays upon final trial hereof, this Court grant his: appropriate nominal and actual damages; compensatory and punitive damages as allowed by law; liquidated damages as allowed by law; mental anguish damages; reasonable attorney's fees both for the trial of this cause and any and all appeals as may be necessary; all expert witness fees incurred in the preparation and prosecution of this action; prejudgment and post-judgment interest as allowed by law; taxable court costs; nominal, actual and exemplary damages as allowed by federal law and any such additional and further relief that this Court may deem just and proper.

Respectfully submitted,

ATTORNEY FOR PLAINTIFF,
FREDDIE L. BROWN, JR.

By: */s/Jason R. Bush*
Jason R. Bush

Of counsel:

Jason R. Bush (MB #100451)
The Law Offices of Jason Bush, PLLC
P.O. Box 2976
Madison, MS 39110
Telephone: 601.499.0185
jason@jasonbushlaw.com

Of Counsel:

Howard T. Dulmage (pro hac vice application forthcoming)
The Law Offices of Howard T. Dulmage, PLLC.
State Bar No. 24029526
Federal I.D. No. 28826

2323 Clear Lake City Blvd.
Suite 180 MB 186
Houston, Texas  77062
Telephone:   (281) 271-8540
Telecopier:   (832) 295-5797
howard@dulmagelaw.com

15